## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TOBY CHAVEZ,

        Petitioner,

    vs.                                      No. CIV 13-0338 JB/SCY

GERMAN FRANCO, Warden, and
GARY K. KING, New Mexico Attorney General,

        Respondents.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Respondents' Motion for Judgment on the Pleadings as to Toby G Chavez's Petition for Writ of Habeas Corpus (28 U.S.C. § 2554)(Doc. 16)("Motion"). The primary issues are: (i) whether the alleged procedural violations in Chavez' state court trial were contrary to or unreasonable applications of federal law; (ii) whether the state court acted contrary to or unreasonably applied federal law in dismissing Chavez' ineffective assistance of counsel claim. The Court concludes that: (i) the alleged procedural violations in Chavez' state court trial were not contrary to or unreasonable application of federal law; and (ii) the state court did not act contrary to or unreasonably applied federal law in dismissing Chavez' ineffective assistance of counsel claim. The Court will, therefore, grant the Motion, and dismiss the Petition with prejudice.

## <u>FACTUAL BACKGROUND</u>

The underlying facts involve an incident on April 20, 1999, during which Chavez shot and killed Robert Tischmacher. On April 20, 1999, Robert and Isabel Tischmacher were traveling through Albuquerque, New Mexico, on their way to Denver, Colorado, to see their new great grandchild. <u>See</u> Vol. 7, State Trial Transcript at 48-49 (taken Aug. 29, 2000), filed July 16,

2013 (Doc. 14-19)("Aug. 29, 2000 Tr.").  The Tischmachers lived in Arizona.  See Aug. 29, 2000 Tr. at 48-49.  After arriving in Albuquerque, the Tischmachers checked into their motel and then went to Sandia Pueblo Casino to have dinner and to play poker and the machines.  See Aug. 29, 2000 Tr. at 49.  Sometime around 10:00 p.m., they left the casino and went to the Love's gas station to fill their truck with diesel.  See Aug. 29, 2000 Tr. at 51.  They wanted to be ready to get on the highway right after breakfast the next morning.  See Aug. 29, 2000 Tr. at 51.  While Mr. Tischmacher filled the truck with fuel, Mrs. Tischmacher went into the store to purchase ice cream and to pay for the diesel.  See Aug. 29, 2000 Tr. at 52.

Meanwhile, Chavez, Patrick DeHerrera, and Beverly Young -- DeHerrera's girlfriend -- were driving around Albuquerque in a blue Chevrolet Corsica, and, according to Young, Chavez and DeHerrera were "conversating."  Vol. 9, State Trial Court Transcript at 40-42 (taken Aug. 31, 2000), filed July 16, 2013 (Doc. 14-28)("Aug. 31, 2000 Tr.").  Young testified that, during the drive, Chavez passed a small gun to DeHerrera, which DeHerrera then shot once out the window.  See Aug. 31, 2000 Tr. at 43.  Eventually, the three of them arrived at Love's gas station, where they saw Mr. Tischmacher, putting fuel in his truck.  See Aug. 31, 2000 Tr. at 44.  Young testified that Chavez said: "There is an old man that looks like he'll give up the wallet easy."  Aug. 31, 2000 Tr. at 44-45.

According to Young, both Chavez and DeHerrera exited the vehicle, and DeHerrera told Young to "duck down."  Aug. 31, 2000 Tr. at 49, 45.  Young testified that she saw Chavez, with his hands behind his back, approach Mr. Tichmacher and then pull his hands forward.  See Aug. 31, 2000 Tr. at 45, 49, 53.  Young then saw Mr. Tischmacher spray Chavez with fuel, Chavez jump back, and then a flash.  See Aug. 31, 2000 Tr. at 49.  After the flash, Chavez and DeHerrera ran back to the Corsica and drove to Chavez' house.  See Aug. 31, 2000 Tr. at 55-56.

Young testified that, upon returning to the vehicle, Chavez said: "Shit, I shot the old man.  I

think he's dead."  Aug. 31, 2000 Tr. at 52, 56.

      Detvongsa and his girlfriend, Nina Locson, were also at the Love's gas station that night,

filling up Detvongsa's vehicle with diesel.  See Aug. 29, 2000 Tr. at 101-02.  Detvongsa was on

the opposite side of the diesel island from Mr. Tischmacher when he noticed a blue Corsica pull

in around and behind his vehicle.  See Aug. 29, 2000 Tr. at 102-03.  Detvongsa testified that he

saw two men emerge from the Corsica and approach Mr. Tischmacher, and that one man was

carrying a gun.  See Aug. 29, 2000 Tr. at 106, 119-20.  Detvongsa initially testified that the man

with the gun told Mr. Tischmacher, "Excuse me, sir, I want your money and your car keys."

Aug. 29, 2000 Tr.  at 106.  He later testified that Chavez said: "I want to say this one time.  Give

me your car key and your money."  Aug. 29, 2000 Tr. at 146.  According to Detvongsa, Mr.

Tischmacher looked at the man with the gun and then sprayed fuel on his face.  See Aug. 29,

2000 at 106.  Detvongsa testified that, after Mr. Tischmacher sprayed Chavez with fuel, Chavez

shot Mr. Tischmacher with one shot from his gun.  See Aug. 29, 2000 Tr. at 106-08.  The two

men then ran back to the Corsica and "took off."  Aug. 29, 2000 Tr. at 106-108.

      On April 23, 1999, Chavez turned himself in to the police.  See Petition at 12; Dec. 28,

2012 Order at 27.  Albuquerque Police Department Detective Victor Jojola interviewed Chavez.

See Dec. 28, 2012 Order at 27-51.  During the interview, Chavez admitted to shooting Mr.

Tischmacher.  See Dec. 28, 2012 Order at 28, 31.  Chavez stated he acted alone, and that he

acted in self-defense.  See Dec. 28, 2012 Order at 39, 40.

      On September 1, 2000, a jury found Chavez guilty of one count each of First Degree

Murder (Felony Murder); Second Degree Murder; Conspiracy to Commit Armed Robbery;

Attempt to Commit a Felony, to wit: Armed Robbery; and three counts of Tampering with

Evidence.  See Court's Instructions to the Jury at 41, 42, 46, 47, 50, 51, 53, filed July 16, 2013 (Doc. 17-1)("Jury Instructions").  The jury found Chavez not guilty of Conspiracy to Commit First Degree Murder and Conspiracy to Commit Tampering with Evidence.  See Jury Instructions at 45, 52.  On November 14, 2000, the trial judge, the Honorable Diane Dal Santo, District Judge, County of Bernalillo, State of New Mexico, entered a Judgment, Sentence and Commitment sentencing Chavez to a total term of "life plus thirteen and one-half (13 1/2) years." Petition at 4; Judgment, Sentence and Commitment at 3, filed June 26, 2013 (Doc. 11-1)("Judgment").

On December 14, 2000, Chavez filed a direct appeal from his judgment and sentence with the Petition.  See Decision of the Supreme Court of New Mexico at 59-74, filed June 26, 2013 (Doc. 11-2)("Decision").  On direct appeal, Chavez claimed as follows:

> [T]he trial court erred: (1) in denying a motion to suppress statements he had made to police; (2) in reversing its ruling to exclude the testimony of a witness [Detvongsa]; and (3) in limiting the cross-examination of that witness and another [Young].  He also contends (4) that the State offered insufficient evidence to support the conviction for felony murder.  Finally, Defendant argues he was deprived: (5) of his right to effective assistance of counsel and (6) of his right to a fair trial.

Decision at 61.  On February 27, 2003, the New Mexico Supreme Court affirmed Chavez' judgment and sentence.  See Decision at 74.

Chavez subsequently filed several motions and petitions in state court seeking habeas relief on grounds including: (i) his convictions for first-degree (felony) murder and second-degree murder were a violation of his right under the Fifth Amendment to the Constitution of the United States of America to be free from double jeopardy; (ii) ineffective assistance of counsel for failing to (a) conduct an independent investigation and then impeach Phixay Detvongsa; (b) investigate the victim's reputation for violence; (c) explain to the jury that the State had not

proven each essential element of each charged offense; (d) investigate Chavez' state of mind at the time of the commission of the offense; (e) address sentencing error and improper enhancement; and (f) properly advise Chavez of his rights to remain silent and also to present a defense; (iii) erroneous jury instructions; and (iv) cumulative error. See Petition at 5-8; Respondent's Answer to *Pro Se* Petitioner Toby G Chavez's Petition for Writ of Habeas Corpus (18 U.S.C. § 2254) [Doc. 1] at 3-7, filed June 26, 2013 (Doc. 11)("Answer"). Chavez' state court petitions resulted in two amended judgments and sentences. See Amended Judgment, Sentence and Commitment at 4-8, filed June 26, 2013 (Doc. 11-1)("Amended Judgment"); Second Amended Judgment, Sentence and Commitment at 9-12, filed June 26, 2013 (Doc. 11-1)("Second Amended Judgment"). On July 9, 2010, the trial judge entered an Amended Judgment, Sentence and Commitment to reflect the following: "On appeal in the New Mexico Supreme Court (No. 32,206), the included offense of Second Degree Murder was ordered to be vacated as is therefore also dismissed (this has no impact on the sentence in this case)." Petition at 4. See Amended Judgment at 6. On January 16, 2013, the trial judge entered a Second Amended Judgment, Sentence and Commitment to reflect that the enhancements factored into Chavez' total term of imprisonment should run concurrently with each other, as opposed to running consecutively. See Petition at 4; Second Amended Judgment at 11. Aside from the two amended judgments and sentences, Chavez' multiple motions and petitions related to habeas relief were denied. See Order on Petition for Writ of Habeas Corpus at 23-24, filed June 26, 2013 (Doc. 11-3); Order at 23, filed June 26, 2013 (Doc. 11-5)("June 24, 2010 Order"); Order at 33, filed June 26, 2013 (Doc. 11-5)("Aug. 13, 2010 Order"); Order on Amended Petition for Writ of Habeas Corpus at 23-30, filed June 26, 2013 (Doc. 11-13)("Dec. 28, 2012 Order"); Order at 111, filed June 26, 2013 (Doc. 11-13)("Feb. 11, 2013 Order").

## PROCEDURAL BACKGROUND

On April 9, 2013, Chavez filed his Petition before this Court.  <u>See</u> Petition.  Chavez raises the following trial court errors as grounds for habeas relief:  (i) Judge Dal Santo erred in denying Chavez' motion to suppress; (ii) Judge Dal Santo erred in failing to sever the trial; (iii) Judge Dal Santo was acutely biased against Chavez resulting in an unfair trial; (iv) Judge Dal Santo erred in limiting Detvongsa's testimony; and (v) Judge Dal Santo erred in allowing erroneous jury instructions.  <u>See</u> Petition at 21-38.  Chavez also raises the following ineffective assistance of counsel claims: (i) failure to investigate Chavez' state of mind at the time of the incident and at trial; (ii) failure to properly counsel Chavez as to his right to testify; (iii) failure to explain to the jury that each and every element must be proven beyond a reasonable doubt; and (iv) failure to conduct an adequate investigation and to impeach Detvongsa.  <u>See</u> Petition at 21-83.

## LAW REGARDING RULE 12(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice.  <u>See</u> Fed. R. Civ. P. 12(c).  A motion pursuant to rule 12(c) is generally treated in the same manner as a rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Mock v. T.G. & Y. Stores Co.</u>, 971 F.2d 522, 528 (10th Cir. 1992).   The court accepts all well-pleaded allegations of the non-moving party as true and views all facts in a light most favorable to the non-moving party. <u>See</u> <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  In ruling on a motion to dismiss for failure to state a claim, "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."   <u>Alvarado v. KOB-TV,</u>

L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007)(citing Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), and Erickson v. Pardus, 551 U.S. 89 (2007)(citation omitted)).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir.1994).  The sufficiency

of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must

accept as true all well-pled factual allegations in the complaint, view those allegations in the light

most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's

favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a

reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would

the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098

(10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-

pled factual allegations in a complaint and view these allegations in the light most favorable to

the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action" is

insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550

U.S. at 555).   "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly,

550 U.S. at 555 (citation omitted).

     To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that,

if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v.

Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has

facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at

678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556.  "Thus, the mere metaphysical

possibility that some plaintiff could prove some set of facts in support of the pleaded claims is

insufficient; the complainant must give the court reason to believe that this plaintiff has a

reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v.

Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible." The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (citations omitted)(quoting Bell Atl. Corp. v. Twombly,

550 U.S. at 570).

## LAW REGARDING HABEAS CORPUS

     The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

2254, governs the Court's review,.  Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007).

"Under AEDPA, a federal court in a § 2254 proceeding must be exquisitely deferential to the

state court's resolution of the defendant's claims."  Black v. Workman, 682 F.3d 880, 891 (10th

Cir. 2012).   AEDPA establishes "a difficult to meet and highly deferential standard for

evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011)(citations omitted)(internal quotation marks omitted).  Further, the Supreme Court of the United States has emphasized in the strongest terms the obstacles to § 2254 relief.  In Harrington v. Richter, --- U.S. ---, 131 S.Ct. 770, 786 (2011), the Supreme Court observed that § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.  Consequently, to obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 131 S.Ct. at 786-87.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S.Ct. at 784-85.

Accordingly, if a claim is adjudicated on the merits in state court, federal habeas relief may be granted to a petitioner

> only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

Spears v. Mullin, 343 F.3d 1215, 1225 (10th Cir. 2003) (quoting 28 U.S.C. § 2254(d)(1)).

The United States Court of Appeals for the Tenth Circuit has explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably

applied the governing legal principle to the facts of the Petitioner's case.  'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, the application must also be unreasonable.' 'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'  AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the Petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002)(citing 28 U.S.C. § 2254(e)(1)).

Moreover, "[f]ederal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  Thompson v. Oklahoma, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000) (unpublished)(citing Herrera v. Collins, 506 U.S. 390, 400 (1993)).

## LAW REGARDING THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

The Supreme Court has held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during custodial interrogation without a prior warning.  See Miranda v. Arizona, 384 U.S. 436, 444 (1966).  The Supreme Court explained:

By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

384 U.S. at 444.  In addition to the existence of a valid waiver under Miranda v. Arizona, a statement must also be voluntary for it to be admissible.  See Dickerson v. United States, 530 U.S. 428, 434 (2000).

"A statement is involuntary in violation of due process if 'a defendant's will was overborn by the circumstances surrounding' his confession."  United States v. Lamy, 521 F.3d 1257, 1261 (10th Cir. 2008)(quoting Dickerson v. United States, 530 U.S. at 434).  The Tenth Circuit, in United States v. Lamy, held that "[c]oercive police activity is a necessary predicate" to a constitutionally involuntary confession."  521 F.3d at 1261 (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)).  The Tenth Circuit cited the following factors relevant to determining whether officers took unfair advantage of a defendant's traits or the surrounding circumstances in obtaining a statement: "(1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment."  United States v. Lamy, 521 F.3d at 1262 (quoting United States v. Toles, 297 F.3d 959, 966 (10th Cir. 2002)(citation omitted).

## ANALYSIS

The Court finds that Chavez' Petition lacks a solid basis in the law and facts.  The Court will, therefore, grant the Motion, and dismiss the Petition with prejudice.

**I.    THE COURT FINDS THAT THE ALLEGED PROCEDURAL VIOLATIONS IN CHAVEZ' STATE COURT TRIAL WERE NOT CONTRARY TO OR UNREASONABLE APPLICATIONS OF FEDERAL LAW.**

**A.    JUDGES KNOWLES AND DAL SANTO[1] DID NOT ACT CONTRARY TO, OR UNREASONABLY APPLY FEDERAL LAW IN DENYING CHAVEZ' MOTION TO  SUPPRESS.**

---

[1]Chavez' case was transferred from Judge Knowles to Judge Dal Santo after the January 12, 2000, and April 13, 2000, hearings on Chavez' Motion to Suppress.  It is not clear to the

Chavez argues the Honorable Richard J. Knowles, District Judge for the Second Judicial District Court, County of Bernalillo, State of New Mexico, and the Honorable Diane Dal Santo erred when they denied Chavez' Motion to Suppress, because his confession to Detective Jojola "was not made voluntarily, with full understanding of the consequences, or even when he possessed the capacity to understand the nature of his actions in making a statement." Petition at 28. Chavez argues that his videotaped statement reflects he was chemically impaired at the time he gave his statement and that he reported he had not eaten or slept for days. See Petition at 28. Chavez contends that, because he was "not in full possession of his faculties," his statement was taken in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. See Petition at 28.

Chavez argued on direct appeal that Judges Knowles and Dal Santo erred in denying his Motion to Suppress. The Respondents, therefore, do not dispute that available state-court remedies with respect to this issue have been exhausted. See Answer at 11.

The record supports that, on January 12, 2000, Judge Knowles held a pretrial hearing on, among other things, Chavez' Motion to Suppress. See Vol. 1, State Trial Transcript at 3-58 (taken Jan. 12, 2000), filed July 16, 2013 (Docs. 14:1-14:4)("Jan. 12, 2000 Tr."). The issues before Judge Knowles were: (i) whether police properly Mirandized Chavez and (ii) whether the statement offered was voluntary. See Jan. 12, 2000 Tr. at 3-58. Judge Knowles heard testimony from APD Officer Steve Picchione, APD Officer Dennis Yurkison, and APD Detective Jojola regarding the circumstances of and events following Chavez turning himself in on an outstanding

---

Court why this occurred. Because both judges denied Chavez' Motion to Suppress, the Court will construe Chavez' habeas claim -- which states that "[t]he District Court erred when it denied Petitioner's Motion to suppress his statements" -- as addressing both judges' decision to deny his Motion to Suppress. Petition at 28.

warrant for homicide.  See Jan. 12, 2000 Tr. at 3-58.  Jojola testified that he made both a video

and audio tape of his interview with Chavez.  See Jan. 12, 2000 Tr. at 35-36, 52.  Because the

videotape was not yet available to offer as evidence, Chavez requested that Judge Knowles

reserve ruling on Chavez' Motion to Suppress until he had an opportunity to review the

videotape.  See Jan. 12, 2000 Tr. at 53.  Judge Knowles declined to wait.  See Jan. 12, 2000 Tr.

at 53

Having heard witness testimony and argument from counsel, Judge Knowles denied

Chavez' Motion to Suppress and reasoned as follows:

> I'm going to propose that I realize [sic] the State has the burden of showing that
> there was, in fact, Miranda warnings were given, and based on the fact that you
> raised the suppression hearing, they've got the burden on the issue of
> voluntariness and that any waiver is knowing and intelligent.
>
> . . . .
>
> The evidence I have right now is uncontroverted on the issue of [whether] the
> Miranda warnings haven't been given.  . . .  I don't have any evidence of anything
> other than the Defendant was lucid that through his actions, he was well informed
> as to what he could do, and he could stop at any point.  Everything appears to be
> voluntary.  . . .
>
> I deny the motion and then you can supplement the record and ask me to
> reconsider.

Tr. Jan. 12, 2000 Tr. at 56-58.

On April 13, 2000, Judge Dal Santo held a pretrial hearing, at which time Chavez moved

Judge Dal Santo to reconsider his Motion to Suppress in light of the videotape of Chavez'

statement having been admitted into evidence and reviewed by Judge Dal Santo.  See Vol. 2,

State Trial Transcript at 1-39 (taken April 13, 2000), filed July 16, 2013 (Doc. 14-5)("Apr. 13,

2000 Tr.").  Chavez argued again that he was not in possession of his faculties at the time of his

interview with Detective Jojola because he was high on heroin and cocaine.  See Apr. 13, 2000

Tr. at 6.  Chavez also argued that other than the police officers' testimony, "there is no record

indicating that his rights were read to him."  Apr. 13, 2000 Tr. at 6.  Having heard argument from

counsel, Judge Dal Santo ruled as follows:

> I also looked at the videotape in regards to the motion to suppress the videotape of
> the testimony.
>
> . . . .
>
> I did carefully read the transcript and I did read the testimony of the officers that
> were involved in taking the statement, and it did, to me, ring true.  I didn't have
> any credibility problems with it, so I am going to find that the Defendant, Toby
> Chavez, voluntarily, knowingly, and intelligently waived his rights, what rights he
> would have under Miranda, when he made the statement, and so the statements
> will be admitted.  With the statement is a jury instruction, that, you know, then the
> jury makes the decision whether or not the statement is voluntary also.  I believe
> that is a standard UJI with any statement that comes in.

April 13, 2000 Tr. at 6-8.

The Supreme Court has held that the Fifth Amendment privilege against

self-incrimination prohibits admitting statements given by a suspect during custodial

interrogation without a warning.  See Miranda v. Arizona, 384 U.S. at 444.  The Supreme Court

explained:

> By custodial interrogation, we mean questioning initiated by law enforcement
> officers after a person has been taken into custody or otherwise deprived of his
> freedom of action in any significant way.  As for the procedural safeguards to be
> employed, unless other fully effective means are devised to inform accused
> persons of their right of silence and to assure a continuous opportunity to exercise
> it, the following measures are required. Prior to any questioning, the person must
> be warned that he has a right to remain silent, that any statement he does make
> may be used as evidence against him, and that he has a right to the presence of an
> attorney, either retained or appointed. The defendant may waive effectuation of
> these rights, provided the waiver is made voluntarily, knowingly and intelligently.

384 U.S. at 444.  In addition to the existence of a valid waiver under Miranda v. Arizona, a

statement must also be voluntary for it to be admissible.  See Dickerson v. United States, 530

U.S. at 434.

- 14 -

"A statement is involuntary in violation of due process if 'a defendant's will was overborn by the circumstances surrounding' his confession." United States v. Lamy, 521 F.3d at 1261 (quoting Dickerson v. United States, 530 U.S. at 434). The Tenth Circuit, in United States v. Lamy, held that "[c]oercive police activity is a necessary predicate" to a constitutionally involuntary confession." 521 F.3d at 1261 (quoting Colorado v. Connelly, 479 U.S. at 167). The Tenth Circuit cited the following factors relevant to determining whether officers took unfair advantage of a defendant's traits or the surrounding circumstances in obtaining a statement: "(1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." United States v. Lamy, 521 F.3d at 1262 (quoting United States v. Toles, 297 F.3d at 966 (citation omitted)).

In support of his argument that his statement was involuntary, Chavez has done nothing more than conclusively state his statement was involuntary. The record supports no evidence of police coercion -- a necessary predicate to a constitutionally involuntary confession. See United States v. Lamy, 521 F.3d at 1261. As pointed out by the Supreme Court of New Mexico, Chavez' alleged physical exhaustion was not the result of incarceration or other police action, because "he chose the time and place to turn himself in to the police." Decision at 63. Upon doing so, Chavez indicated he was prepared and willing to give a statement regarding the homicide that occurred a few days prior. See Jan. 12, 2000 Tr. at 11-12. Chavez' interview began at 9:19 p.m. and ended at 9:45 p.m., taking less than half an hour. See Dec. 28, 2012 Order at 27, 50. That the interview lasted only twenty-six minutes belies Chavez' allegations of coercion. Further, Judge Dal Santo squarely placed the question of voluntariness before the jury by instructing:

Instruction No. 27

Evidence has been admitted concerning a statement allegedly made by defendant Toby G. Chavez.  Before you consider such statement for any purpose, you must determine that the statement was given voluntarily.  In determining whether a statement was voluntarily given, you should consider if it was freely made and not induced by promise or threat.

Jury Instructions at 29.

The jury's decision to convict Chavez indicates that either the jury also determined Chavez' statement to be voluntary, or determined, even without the statement that sufficient evidence existed to conclude beyond a reasonable doubt that Chavez was guilty as charged. Thus, in dismissing Chavez' suppression claim, Judges Knowles and Dal Santo did not act contrary to, or unreasonably apply federal law.  Consequently, on the issue of suppression, Chavez has failed to state a claim upon which relief can be granted.

### B.   JUDGE DAL SANTO DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW WHEN SHE DENIED CHAVEZ' MOTION TO SEVER HIS TRIAL FROM THAT OF HIS CO-DEFENDANT.

Chavez contends that Judge Dal Santo erred in failing to sever his trial from that of his co-Defendant, DeHerrera.  See Petition at 28.  The Respondents note that Chavez raised the issue of severance for the first time in this Petition and, therefore, it should be deemed unexhausted. See Answer at 11; Respondents' Memorandum in Support of Their Motion for Judgment on the Pleadings as to Toby G. Chavez's Petition for Writ of Habeas Corpus at 9 n.7, filed July 16, 2013 (Doc. 17)("Memorandum").  Nonetheless, based on their argument that Chavez' severance argument also lacks merit, the Respondents ask the Court to decide this issue even though it was not exhausted below.  See Answer at 12; Memorandum at 9 n.7.  In contrast, despite having raised the severance issue, Chavez now asks the Court to "dismiss this unexhausted claim and proceed with the other claims of the petition which the Respondents agree have all been

- 16 -

exhausted in State Court."  Petitioner's Reply to Respondent's Answer to Petitioners' Petition for

Writ of Habeas Corpus (28 U.S.C. § 2554) at 1, filed July 2, 2014 (Doc. 12)("Reply").

 The Court has several options available to it when presented with a petition that contains

both exhausted and unexhausted claims.  See Fairchild v. Workman, 579 F.3d 1134, 1156 (10th

Cir. 2009).  The Court can:

> (1) dismiss the mixed petition in its entirety, Rhines [v. Weber], 544 U.S. [269],
> 274 . . . [(2005)]; (2) stay the petition and hold it in abeyance while the petitioner
> returns to state court to raise his unexhausted claims, id. at 275 . . . (3) permit the
> petitioner to dismiss the unexhausted claims and proceed with the exhausted
> claims, id. at 278 . . . ; or (4) ignore the exhaustion requirement altogether and
> deny the petition on the merits if none of the petitioner's claims has any merit, 28
> U.S.C. § 2254(b)(2).

Fairchild v. Workman, 579 F.3d at 1156 (10th Cir. 2009).  The Court finds that Chavez'

contention that Judge Sal Santo erred in not severing the trial lacks a solid basis in law or fact.

Therefore, for the reasons discussed below, it will ignore the exhaustion requirement as to this

claim.

 Although Chavez' co-Defendant DeHerrera moved for severance prior to trial on January

7, 2000, Chavez did not join that motion.[2]  See Jan. 12, 2000 Tr.  at 116-129.  Nonetheless, the

severance argument that Chavez now presents is identical to the severance argument that his

co-defendant made in the underlying trial.  There, co-Defendant DeHerrera argued that he and

Chavez were presenting "conflicting irreconcilable defenses" that could cause the jury to infer

guilt as to both defendants.  Jan. 12, 2000 Tr. at 118-130.  The trial court denied co-Defendant

DeHerrera's motion based partly on the fact that the record contained no evidence of inconsistent

---

[2]On April 13, 2000, Chavez' counsel explicitly informed Judge Dal Santo that the motion to sever was not filed on Chavez' behalf.  See April 13, 2000 Tr. at 5.  However, at trial, during the testimony of Beverly Young on August 31, 2000, Petitioner's counsel stated during the course of a bench conference that he wanted to "[m]ove for severance."  Aug. 31, 2000 Tr. at 86. Nonetheless, Petitioner's counsel did not argue a motion to sever at that time.  See Aug. 31, 2000 Tr. at 86.

defenses.  Jan. 12, 2000 Tr. at 129; April 13, 2000 Tr. at 8.  Like his co-Defendant before him,

Chavez now broadly asserts that Judge Dal Santo's failure to sever his trial with co-Defendant

DeHerrera because of their "inconsistent defenses" amounted to a "deprivation of constitutional

due process and fair trial rights," and "culminated in cruel and unusual punishment."  Petition at

29.  The Respondents argue that severance of trials is solely a matter of state law and that no

constitutional right to severance exists absent a strong showing of prejudice caused by a joint

trial.  See Answer at 17.  The Respondents further argue that Chavez has made no showing of

prejudice.  Since the determination of whether Chavez' severance claim is cognizable turns on a

consideration of the merits, the Court will address this claim below.

"Joint trials of defendants who are indicted together are preferred because 'they promote

efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent

verdicts.'"  United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007)(quoting Zafiro v.

United States, 506 U.S. 534, 537 (1993)).  "Whether the trial court erred in denying severance is

generally a question of state law that is not cognizable on federal habeas appeal."  Cummings v.

Evans, 161 F.3d 610, 619 (10th Cir. 1998)(citing Bond v. Oklahoma, 546 F.2d 1369, 1377 (10th

Cir. 1976)).  Additionally, "a criminal defendant has no constitutional right to severance unless

there is a strong showing of prejudice caused by a joint trial."  Cummings v. Evans, 161 F.3d at

619 (citing United States v. Youngpeter, 986 F.2d 349, 353 (10th Cir. 1993)).  The prejudice

standard requires a showing of actual prejudice, not merely a showing that a defendant "may

have a better chance of acquittal in separate trials."  United States v. Pursley, 474 F.3d 757, 766

(10th Cir. 2007).  To establish prejudice, a defendant must identify a "'specific trial right' that

was compromised or show the jury was 'prevented . . . from making a reliable judgment about

guilt or innocence.'"  United States v. Pursley, 474 F.3d at 766 (quoting Zafiro, 506 U.S. at 539).

Here, Chavez' conclusory statements of prejudice are insufficient to meet the required showing of actual prejudice and fail to identify a specific trial right that was compromised.  First, Chavez fails to demonstrate that he and co-defendant DeHerrera had inconsistent defenses.  To the contrary, the trial court found and the record supports that their defenses were not inconsistent.  See Jan. 12, 2000 Tr. at 129; April 13, 2000 Tr. at 8.  The record also supports that co-defendant DeHerrera's defense theory was not inculpatory as to Chavez.  For example, co-Defendant DeHerrera consistently represented he had nothing to do with shooting Mr. Tischmacher and was "in the wrong place at the wrong time," while Chavez consistently represented he acted in self-defense.  Aug. 29, 2000 Tr. at 30-39, 40-44; Vol. 10, State Trial Transcript at 169-208 (taken Sept. 1, 2000), filed July 16, 2013 (Doc. 14:28-14:31)("Sept. 1, 2000 Tr.").  Moreover, co-defendant DeHerrera did not testify at trial so as to contradict or undermine either Chavez' defense theory or his own defense theory.

Second, even if Chavez could demonstrate their defenses were inconsistent, "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538.  Chavez still bears the heavy burden of showing actual prejudice, which he has not done.  Here, Chavez repeated his theory of self-defense throughout the trial.  Chavez' attorney, Lee P. McMillian, discussed it in his opening statement and closing argument.  See Aug. 29, 2000 Tr. at 40-44; Sept. 1, 2000 Tr. at 189-208.  Chavez presented to the jury his explanation of what happened, including his affirmative statement that he acted in self-defense, through his taped interview with police.  See Sept. 1, 2000 Tr. at 197; Dec. 28, 2012 Order at 39.  Finally, Judge Dal Santo specifically instructed the jury on Chavez' theory of self-defense.  See Jury Instructions at 10.

Third, even if the district court had severed the trial, there is no basis to conclude that the same witnesses and evidence would not have been used as to both defendants.  The state

represented that "[a]ll evidence the State is going to present, all the same evidence is admissible against both Defendants."  Jan. 12, 2000 Tr. at 127-28.  As such, Chavez would not have avoided the incriminating testimony and evidence the State presented at trial.

For these reasons, the Court concludes that Chavez has not shown actual prejudice, has not identified a specific trial right that was compromised, and has not shown that Judge Dal Santo's decision not to sever the trial prevented the jury from making a reliable judgment about guilt or innocence.  Judge Dal Santo did not act contrary to or unreasonably apply federal law. Chavez, therefore, has failed to state a claim upon which relief can be granted.

**C.    THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' CLAIM THAT JUDGE DAL SANTO'S ALLEGED BIAS RESULTED IN AN UNFAIR TRIAL.**

Chavez asserts that animosity between his attorney, Mr. McMillian, and Judge Dal Santo denied him a fair trial.  See Petition at 29-30.  Chavez specifically points to two interactions between the trial judge and his counsel.  See Petition at 13-18.  The first involved objections that Mr. McMillian raised during the testimony of Beverly Young.  See Petition at 13-18; Aug. 31, 2000 Tr. at 83-90.  The second involved objections that Mr. McMillian raised soon after Chavez began testifying and during which Mr. McMillian moved for a mistrial based on complaints of the "Court's uneven treatment of me during the trial."  Petition at 13-18; Aug. 31, 2000 Tr. at 169-70.  Chavez further asserts that Judge Dal Santo's treatment of Mr. McMillian cut short his testimony and deprived him of his right to testify.  See Petition at 30.  Respondent argues that the "complained-of remarks all were made outside the presence of the jury" and that Chavez alone made the decision to end his testimony.  Memorandum at 22.  The Court will not consider the affidavit of Judith Reed attached to Chavez' Petition wherein she states her opinion that Judge Del Santo's "demeanor and what appeared to be attacks against Mr. McMillian during the

testimony of Mr. Chavez caused Mr. Chavez to terminate his testimony early and refuse to testify further." Motion to Add Exhibit at 4, filed June 17, 2013 (Doc. 8). This affidavit was not before either the Supreme Court of New Mexico or the habeas court when each found that Chavez independently waived his right to testify; the affidavit should not be construed for the first time here. See Cullen v. Pinholster, 131 S.Ct. 1388, 1400 (2011)(holding that, where claim has been adjudicated on the merits, federal habeas court's review is limited to record that was before the state court(s)).

Chavez argued on direct appeal that Judge Dal Santo was biased against Mr. McMillian. Therefore, Respondents do not dispute that available state-court remedies with respect to this issue have been exhausted. See Answer at 12.

The first interaction to which Chavez cites occurred during Young's testimony. After co-defendant DeHerrera's counsel objected to one of Mr. McMillian's questions, Judge Dal Santo instructed the parties to approach the bench. See Aug. 31, 2000 Tr. at 83-90. Near the conclusion of the bench conference, the trial judge stated to Mr. McMillian:

> Let me also put you on notice, Mr. McMillan, if you cause something to happen that is prejudicial, that would cause this Court to have to declare a mistrial, I am going to do whatever I need to do in order to -- I mean, if you do something that will do that, I don't know what I'm going to have to do, but it will – there will be severe consequences.

Aug. 31, 2000 Tr. at 88-89.

The second interaction Chavez to which Chavez cites occurred just after Chavez began testifying. The State objected to one of Mr. McMillian's questions, and Judge Dal Santo instructed the parties to approach the bench. See Aug. 31, 2000 Tr. at 168. Shortly after the bench conference ensued, Judge Dal Santo excused the jury so that she could continue the

conference in open court.  See Aug. 31, 2000 Tr. at 170.  Near its conclusion, Judge Dal Santo

stated to Mr. McMillian:

> [Y]ou asked for a mistrial based on the conduct of this Court toward you, and I'm
> going to deny your motion for mistrial.
>
> I think the record will reveal that I – the record will reveal that your client has
> been treated fairly throughout this trial and, Counsel, I think that you have done
> everything possible to win this case through means that are not appropriate, such
> as causing this Court to allow you to cause a mistrial in this case.  I'm going to
> indicate that that is directly contrary to 16-804 in the Code of Professional
> Conduct.
>
> I am concerned about letting you have a free reign because I think that in your
> efforts in this case you've been a loose cannon, and I don't know what you're
> going to do next.
>
> I do note that at the beginning of this trial on August 28th you made a lengthy
> record on a juror for cause, and then you did not exercise a peremptory challenge,
> even though you had a number of peremptory challenges left at the end of it.
>
> On August 29th you were not prepared on the law regarding first aggressor and
> you should have addressed it pretrial.
>
> . . . .
>
> Today you asked for evidence that this Court previously handled in a pretrial
> motion.  You continued to argue with the Court.  I have never seen anybody argue
> -- I've never had anybody continue to argue with me once I've made a ruling.  It
> makes me believe that you're conducting yourself differently because I'm a
> woman, including this morning when you made a statement about what I drove
> and that I was a good-looking blond driving a particular car and that's how I got
> through traffic.

Aug. 31, 2000 Tr. at 175-77.

Chavez had just begun testifying when this interaction between Judge Dal Santo and Mr.

McMillian occurred.  On the heels of that interaction, Mr. McMillian responded briefly to Judge

Dal Santo and stated that he did not see how Chavez could get a fair shake testifying.  See Aug.

31, 2000 Tr. at 178.  With that explanation, Mr. McMillian advised Judge Dal Santo: "We rest."

Aug. 31, 2000 Tr. at 178.  Judge Dal Santo reminded Mr. McMillian that it was Chavez' decision

- 22 -

whether or not to testify and urged Mr. McMillian to consult with Chavez before resting his case. See Aug. 31, 2000 Tr. at 178.  After consulting with Chavez, Mr. McMillian advised Judge Dal Santo that Chavez would not be testifying.  See Aug. 31, 2000 Tr. at 178.  Nonetheless, Judge Dal Santo indicated her concern that Chavez may be making his decision because his counsel was angry.  See Aug. 31, 2000 Tr. at 179.  Judge Dal Santo recessed until the following morning to give Chavez a chance to sleep on his decision.  See Aug. 31, 2000 Tr. at 179.  When Judge Dal Santo reconvened the next morning, she specifically questioned Mr. McMillian and Chavez regarding whether Chavez was waiving his right to testify:

> Court:       Do you feel you have had an adequate amount of time to talk to
>              him?
>
> McMillian:   Yes, Your Honor.  I believe Mr. Chavez thinks so, too.
>
> Court:       And Mr. Chavez do you feel that you've talked to your attorney
>              sufficiently about whether or not you will testify or not testify?
>
> Defendant:   Yes, I do, Your Honor.
>
> Court:       And have you made the decision to not continue to testify?
>
> Defendant:   Yes, I did.
>
> Sept. 1, 2000 Tr. at 38-39.

When presented with a contention that the trial judge deprived a defendant of a fair trial based on an alleged bias,

> our task is not to determine whether the trial judge's conduct left something to be
> desired, or even whether some comments would have been better left unsaid, but
> rather to determine whether the judge's behavior was so prejudicial that it denied
> [the defendant] a fair, as opposed to perfect, trial.  Thus we examine the record to
> determine if jurors have been impressed with the trial judge's partiality to one
> side to the point that this became a factor in their determination.

United States v. Erickson, 561 F.3d 1150, 1166 (10th Cir. 2009)(quoting United States v. Deters, 184 F.3d 1253, 1256 (10th Cir. 1999)).  Even unwarranted judicial reprimand is no basis for

reversal if it is made outside the hearing of the jury.  See United States v. DiTommaso, 817 F.2d 201, 221 (2d Cir. 1987)(citing United States v. Capaldo, 402 F.2d 821, 825 (2d Cir. 1968).

Here, Judge Dal Santo admonished Mr. McMillian outside of the jury's presence.  Thus, the admonitions could not have affected the jury's verdict.  As a further precaution to prevent any comments she might make during trial the jury from affecting the jury, Judge Dal Santo instructed the jury at the beginning of the trial that "[n]o statement, ruling, remark, or comment which I make during the course of the trial is intended to indicate my opinion as to how you should decide the case or to influence you in any way."  Aug. 29, 2000 Tr. at 10.

As to the issue of Chavez' decision not to testify, Judge Dal Santo clearly protected Chavez' right to testify.  "A criminal defendant has a constitutional right to testify in his own behalf at trial.  The decision whether to testify lies squarely with the defendant; it is not counsel's decision."  Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004)(citations omitted).  Here, Judge Dal Santo did not allow Mr. McMillian to "rest" until she was certain he consulted with Chavez regarding Chavez' decision not to testify.  Judge Dal Santo then took a number of unrequired cautionary steps, including delaying the trial and directly questioning Chavez, to ensure that the decision not to testify was his, and not his attorney's.  See Jones v. Estep, 219 F. App'x 723, 726 (10th Cir. 2007)(finding state court was not required, sua sponte, to inquire into murder defendant's decision not to testify after advising defendant of his right to do so).  Thus, the record fails to support Chavez' argument that the trial judge's alleged bias improperly influenced Chavez not to testify.

In dismissing Chavez' unfair bias claim, the state court did not act contrary to or unreasonably apply federal law.  Chavez, therefore, has failed to state a claim upon which relief can be granted.

**D.    THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERL LAW IN DISMISSING CHAVEZ' CLAIM THAT JUDGE DAL SANTO VIOLATED HIS CONFRONTATION RIGHTS BY LIMITING DETVONGSA'S CROSS EXAMINATION.**

Chavez contends that Judge Dal Santo violated his confrontation rights by limiting the cross examination of State witness Detvongsa. See Petition at 32.  Chavez argues that the "court did not allow cross examination of Detvongsa about prior inconsistent statements which would have impeached his testimony of what he says he witnessed at the crime scene."  Petition at 30. Chavez further argues that Judge Dal Santo erred by not allowing evidence regarding Detvongsa's gang affiliation and prior criminal history.  See Petition at 30.  The Respondents counter that Judge Dal Santo did not prevent Chavez from presenting evidence regarding Detvongsa's multiple warrants and bond amounts, and that Judge Dal Santo properly excluded evidence of Detvongsa's gang affiliation as irrelevant.  See Memorandum at 23-24.  Respondents further assert that the court afforded Chavez the opportunity to confront Detvongsa and expose him "as a sometimes less than entirely honest individual with an incentive and motive to testify on the State's behalf."  Memorandum at 23-24.

Chavez argued on direct appeal that Judge Dal Santo erred in limiting Detvongsa's cross examination.  The Respondents, therefore, do not dispute that available state-court remedies with respect to this issue have been exhausted.  See Answer at 12-13.

Detvongsa testified on behalf of the State and provided an eyewitness account of the crime.  On August 28, 2000, before the trial commenced, Judge Dal Santo heard argument from counsel regarding Detvongsa's testimony.  See Vol. 6, State Trial Court Transcript at 8-17 (taken Aug. 28, 2000), filed July 16, 2013 (Doc. 14-28)("Aug. 28, 2000 Tr.").  As to the issue of his prior criminal history, the court stated it would be admitted in compliance with the Federal Rules

of Evidence, specifically rule 609.  <u>See</u> Aug. 28, 2000 Tr. at 16.  As to the issue of Detvongsa's gang affiliation, the trial court reasoned that because the shooting was not gang-related, Detvongsa's gang affiliation was irrelevant.  <u>See</u> Aug. 28, 2000 Tr. at 14-15.  The court stated that to the extent Detvongsa's gang affiliation shaped his opinion about what was happening as it was unfolding, his testimony would be limited to what he actually observed.  <u>See</u> Aug. 28, 2000 Tr. at 14-15.  The court ruled that the attorneys "must follow the Rules of Evidence" and that witnesses should be instructed not to give opinions.  <u>See</u> Aug. 28, 2000 Tr. at 14-15.

The right to cross-examine witnesses is an integral part of the broader Sixth Amendment right to confront witnesses directly in a criminal trial.  <u>United States v. Oliver</u>, 278 F.3d 1035, 1041 (10th Cir. 2001)(citing <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974)).  While a defendant's Sixth Amendment right to cross-examine witnesses is potentially broad enough to require admission of evidence that is otherwise excludable under the Federal Rules of Evidence, it is not an absolute right.  <u>United States v. Oliver</u>, 278 F.3d at 1041 (citing <u>United States v. Abel</u>, 469 U.S. 45, 56 (1984); <u>United States v. Gault</u>, 141 F.3d 1399, 1403 (10th Cir. 1998)).  "The Confrontation Clause guarantees 'only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  <u>United States v. Oliver</u>, 278 F.3d at 1041 (quoting <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985)(per curiam)).  The task is to determine "whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias."  <u>United States v. Oliver</u>, 278 F.3d at 1041 (citing <u>United States v. Gault</u>, 141 F.3d at 1403).

1. **the State Court Did Not Act Contrary to or Unreasonably Apply Federal Law In Dismissing Chavez' Claim that Judge Dal Santo Erred in Excluding Detvongsa's Prior Criminal History and Gang Affiliation as Irrelevant.**

The question whether evidence is relevant is a matter for the trial court's discretion. Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 566 (10th Cir. 1978). Under Tenth Circuit precedent, Chavez may obtain habeas relief for an improper state evidentiary ruling only "if the alleged error was 'so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002)(citing Revilla v. Gibson, 293 F.3d 1203, 1212 (10th Cir. 2002)).

Here, Judge Dal Santo determined that evidence of gang membership was not relevant to the criminal charges against Chavez. While evidence of gang membership can be relevant to show the existence of a conspiracy or that witnesses may be biased in favor of the defendant based on a gang affiliation, neither of those factors were present in this case. See United States v. Brown, 200 F.3d 700, 708 (10th Cir. 1999). Thus, Chavez has not even demonstrated that Judge Dal Santo improperly excluded evidence of Detvongsa's gang membership, much less that the ruling deprived him of a fair trial.

As to admitting evidence of Detvongsa's prior criminal history, Judge Dal Santo stated that rule 609 would apply. See Aug. 28, 2000 Tr. at 16; Fed. R. Evid. 609 (governing impeachment by evidence of a criminal conviction). During the trial, the State questioned Detvongsa whether he had pled guilty to conspiracy to receiving a stolen vehicle in 1997, to which he responded "yes." Aug. 29, 2000 Tr. at 101. The State asked him why he had initially given the police a false name, to which he responded: "Because I had a warrant." Aug. 29, 2000 Tr. at 113. Finally, the State questioned Detvongsa about what promises were made to him in

exchange for his testimony, to which he responded that he would not be arrested, although he would still face outstanding charges.   See Aug. 29, 2000 Tr. at 113-114.   Co-Defendant DeHerrera's counsel also questioned Detvongsa about why he gave a false name to the police on the night Tischmacher was shot, to which he stated he knew there were "DWI charges" against him.   Aug. 29, 2000 Tr. at 128-129.   She further questioned him about what kind of a "deal" he made with the State in exchange for his testimony.   Aug. 29, 2000 Tr. at 135-139.   Finally, co-defendant DeHerrera's counsel specifically asked Detvongsa whether he had an outstanding felony warrant the night of the shooting, to which he responded affirmatively.   See Aug. 29, 2000 Tr. at 140.   When asked whether he had an outstanding misdemeanor warrant, he said he didn't know.   See Aug. 29, 2000 Tr. at 140.   At the conclusion of the trial, the parties ultimately entered a Stipulation regarding Detvongsa's outstanding warrants that was included with the jury instructions as follows: "At the time this incident occurred Phixay Detvongsa had Two (2) outstanding felony warrants.   Both were for felony offenses in the amounts of $10,000 and $225,000.   In the last month the State has agreed to quash those warrants."   Jury Instructions at 2. Judge Dal Santo also read the Stipulation out loud to the jury prior to their deliberations.   See Sept. 1, 2000 Tr.at 110-11.   Judge Dal Santo did not allow the parties to name the specific crimes for which Detvongsa had the outstanding warrants.   See Aug. 29, 2000 Tr. at 137-38.

Chavez has not demonstrated that the trial court made improper evidentiary rulings in disallowing evidence regarding Detvongsa's gang affiliation, or in limiting the cross-examination regarding the nature of Detvongsa's arrest warrants.   The jury was sufficiently apprised of Detvongsa's prior criminal history, and able to make a discriminating appraisal of his motives and bias.   Judge Dal Santo also instructed the jury that Detvongsa had two outstanding warrants for felony offense at the time of the incident.   That Judge Dal Santo disallowed

evidence regarding the precise nature of these pending felony charges against Detvongsa did not deprive Chavez of a fair trial.

> **2.      The State Court Did Not Act Contrary to or Unreasonably Apply Federal Law in Dismissing Chavez' Claim that Judge Dal Santo Erred in Not Allowing Cross-Examination on Detvongsa's Prior Inconsistent Statements.**

The issue regarding "prior inconsistent statements" arose when co-defendant DeHerrera's counsel questioned Detvongsa.   Chavez argues Judge Dal Santo erred in not allowing cross-examination as to whether Detvongsa told his girlfriend, Locson, that he had been sitting in the car and did not see anything, an allegation that Locson incorporated into her own statement prior to trial.  See Petition at 30-32.  The questioning was as follows:

| Reed: | Your girlfriend was there with you, Nina; is that correct? |
|---|---|
| Detvongsa: | Yes. |
| Reed: | And she came out of the Love's Truck Stop and saw something about what happened; isn't that correct? |
| Detvongsa: | She came out after.  She came out when the car took off. |
| Reed: | Okay.  So she came about after the car took off? |
| Detvongsa: | Yes, ma'am. |
| Reed: | Did you talk to her about what happened and what you saw? |
| Detvongsa: | Yes, ma'am. |
| Reed: | And what did you tell her that you saw? |
| Detvongsa: | Exactly what I told you. |
| Reed: | What would you say if Nina said you told her you didn't see anything at all, you were in your car at the time? |

Aug. 29, 2000 Tr. at 131-32.  The State objected.  See Aug. 29, 2000 Tr. at 131-32.  The argument before Judge Dal Santo was whether the statement could be admitted as a prior

inconsistent statement for purposes of impeachment.  Counsel for co-Defendant DeHerrera, Ms. Judith Reed, argued that she was offering the statement for the truth of the matter asserted, and to show that Detvongsa was lying.  <u>See</u> Aug. 29, 2000 Tr. at 133.  Judge Dal Santo sustained the objection.  <u>See</u> Aug. 29, 2000 Tr. at 132, 135.  Ms. Reed later argued that she was not offering the statement for the truth of the matter asserted, but for impeachment only.  <u>See</u> Aug. 29, 2000 Tr. at 152-158.  The record does not indicate that Judge Dal Santo changed her ruling.

Judge Dal Santo held that using Locson's statement that incorporated a statement allegedly made by Detvongsa to impeach Detvongsa on cross-examination was insufficient to overcome the hearsay objection.  <u>See</u> Aug. 29, 2000 Tr. at 152-53.  Rule 801(d)(1)(A) of the Federal Rules of Evidence affords a platform to admit out-of-court statements being offered for the truth of the matter asserted where a party's testimony is inconsistent with their own previously sworn testimony.  <u>See</u> Fed. R. Evid. 801(d)(1)(A).  Locson's statement was not admissible under rule 801(d)(1)(A), because it was not sworn testimony.  Judge Dal Santo was, therefore, correct in sustaining the State's hearsay objection.  However, Ms. Reed had a good faith basis for asking the question to impeach Detvongsa's testimony, and this question was proper under rule 607.  <u>See</u> Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility"); <u>see also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 282 (1999)(recognizing impeachment value of prior statement by a non-party witness that conflicted with that witness' trial testimony).

Even if Judge Dal Santo's refusal to allow impeachment of Detvongsa through a prior inconsistent statement was improper, however, Chavez may obtain habeas relief for an improper state evidentiary ruling only "if the alleged error was 'so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process.'"

Bullock v. Carver, 297 F.3d at 1055.  The evidentiary issue here does not meet this standard.
Here, Mr. Detvongsa testified that his trial testimony matched what he earlier told his girlfriend.
Ms. Reed then asked: "What would you say if Nina said you told her you didn't see anything at
all, you were in your car at the time?"  Aug. 29, 2000 Tr. at 32.  Had Detvongsa answered the
question, he presumably would have simply restated the answer he had previously given, i.e.,
that he told his girlfriend exactly what he told the police.

Moreover, Mr. McMillian effectively impeached Detvongsa's testimony on this issue
through their later examination of Locson.  Locson testified as follows:

| | |
|---|---|
| Fooks: | [Y]ou talked about this incident after with your boyfriend, correct? |
| Locson: | Yes. |
| Fooks: | And at that time he told you that he was in the car when the shooting happened; correct? |
| Locson: | Yes. |

Aug. 29, 2000 Tr. at 173.

| | |
|---|---|
| McMillian: | Now, you don't know exactly where Phixay Detvongsa was at the exact moment of the shooting, do you? |
| Locson: | No. |
| McMillian: | And when you came out of the truck stop, the store inside, you didn't see him anywhere; right? |
| Locson: | No. |
| McMillian: | Okay.  And you discussed the events of the evening with him that night; did you not? |
| Locson: | Yes, that night. |
| McMillian: | And he told you he was inside the car at the time of the shooting, didn't he? |
| Locson: | Yes. |

- 31 -

Aug. 29, 2000 Tr. at 179-180.  Thus, after Detvongsa testified that he told Locson the same thing that he told the police, Mr. McMillian elicited testimony from Locson that contradicted Detvongsa.  This contradiction allowed Mr. McMillian to highlight the alleged inconsistency between Detvongsa's testimony and what he told Locson much more effectively than would have been possible through further cross-examination of Detvongsa.   Further, eliciting this testimony as substantive evidence from Locson rather than as simple impeachment of Detvongsa was much more powerful.  Rather than being stuck with Detvongsa's denial that his testimony differed from what he had told his girlfriend, Mr. Macmillian was able to use Locson's testimony as substantive evidence and highlight during closing arguments the inconsistency of her testimony with Detvongsa's testimony.

Ms. Reed argued in closing as follows: "First of all, we have [Detvongsa].  Prosecutor has actually stated that they think he's credible; that he should be believable.  He said he saw the whole thing. . . . But as he told his girlfriend, he didn't see what happened.  He didn't hear what happened.  He was inside the car."  Sept. 1, 2000 Tr. at 171.

Mr. McMillian argued in closing as follows:

The smart thing to do, if the police are looking for you and you're at a well-lit gas station next to the interstate on a major street in Albuquerque is not to stand by the gas pump in a lighted area where anybody can drive by and see you because there are warrants out for your arrest.  You send your girlfriend in to pay because there is a security guard on premises and there is a videotape.  You sit in the car.  Maybe you listen to the stereo system that was up here.  But you do not stand around in a lighted area and just hope that the police won't come by and arrest you that night, because a quarter of a million dollars is a lot of money to come up with get out of jail.

Sept. 1, 2000 Tr. at 191-92.

Thus, even if the objection sustained during Detvongsa's testimony constituted error, it was not so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness

that is the essence of due process.  Here, the jury was sufficiently apprised of the inconsistent accounts of whether Detvongsa was inside or outside of the car at the time of the crime.

In dismissing Chavez' claim that Judge Dal Santo erred in not allowing cross-examination regarding Detvongsa's prior inconsistent statements, the state court did not act contrary to, or unreasonably apply federal law.  Therefore, Chavez has failed to state a claim upon which relief can be granted.

### E.    IN DISMISSING CHAVEZ' CLAIM THAT THE JURY INSTRUCTIONS WERE LEGALLY INADEQUATE, THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW.

Chavez claims that the jury instructions were "legally inadequate."  Petition at 35. Specifically, he argues that because conviction for attempted armed robbery was a prerequisite to his conviction for felony murder, the attempted armed robbery instruction should have come before the felony murder instruction.  Instead, it came after.  See Petition at 36.  Chavez contends that the order of these instructions could have easily confused the jury.  See Petition at 36. Chavez further alleges that the jury instruction on sufficient provocation was not adequate in that it did not include the doctrine of "fighting words."  Petition at 36.  Chavez argues that his assertion of self-defense required the jury to be instructed on the doctrine of "fighting words." Petition at 37.

Chavez argued on direct appeal that the jury instructions were legally inadequate.  The Respondents, therefore, do not dispute that available state-court remedies with respect to this issue have been exhausted.  See Answer at 13.

A habeas petitioner who seeks to overturn his conviction based on a claim of error in the jury instructions faces a significant burden.  "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction

- 33 -

violates due process.'" <u>Ellis v. Hargett</u>, 302 F.3d 1182, 1186 (10th Cir. 2002)(internal citations omitted).  Here, Judge Dal Santo instructed the jury on both felony murder and attempted armed robbery.  <u>See</u> Jury Instructions at 13, 16.  These instructions tracked New Mexico's Uniform Jury Instructions and accurately stated the law.  <u>See</u> NMRA, Crim. UJI 14-202.  Further, Judge Dal Santo's first instruction to the jury stated as follows: "The law governing this case is contained in these instructions, and it is your duty to follow that law.  <u>You must consider these instructions as a whole</u>.  You must not pick out one instruction or parts of an instruction and disregard others."  Jury Instructions at 3 (emphasis added).  Finally, to the extent any confusion existed, the jury was able to, and did, submit questions seeking clarification of certain instructions.  <u>See</u> Aug. 29, 2000 Tr. at 9-10; <u>See</u> Vol. 11, State Trial Transcript at 3-6 (taken Sept. 5, 2000), filed July 16, 2013 (Doc. 14-37)("Sept. 5, 2000 Tr.").  That Judge Dal Santo did not read instructions to the jury in the order that Chavez preferred falls short of a due-process violation.

Chavez' contention that the jury instructions regarding voluntary manslaughter and sufficient provocation were inadequate is also without merit.  The instructions provided tracked New Mexico's Uniform Jury Instructions on voluntary manslaughter and sufficient provocation.  <u>See</u> Jury Instructions at 8, 9.  <u>See also</u> NMRA, Crim. UJI 14-220; 14-222.  As pointed out by State District Court Judge Ibarra in his Order on Amended Petition for Writ of Habeas Corpus, "[t]he instructions given were Uniform Jury Instructions approved by the New Mexico Supreme Court.  The instructions were sufficiently broad to capture Chavez' argument."  Dec. 28, 2012 at 28.  Thus, Judge Dal Santo instructed the jury as required and sufficiently captured Chavez' theory that Mr. Tischmacher was the aggressor.  As such, these instructions were not so lacking, as Chavez suggests, to infect the entire trial and result in a conviction that violates due process.

- 34 -

In dismissing Chavez' claim that the jury instructions were legally inadequate, the state court did not act contrary to or unreasonably apply federal law.  Therefore, Chavez has failed to state a claim upon which relief can be granted.

## II.     THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

Chavez argues that his trial counsel was ineffective for a number of reasons.  See Petition at 21-26.  To establish ineffective assistance of counsel, Chavez must show that: (i) "counsel's representation fell below an objective standard of reasonableness"; and (ii) "the deficient performance prejudiced the defendant."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  Harrington v. Richter, 131 S.Ct. at 787 (quoting Strickland v. Washington, 466 U.S. at 687).  As to the first prong, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter, 131 S.Ct. at 788 (quoting Strickland v. Washington, 466 U.S. at 690).  "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."  Harrington v. Richter, 131 S.Ct. at 789 (quoting Strickland v. Washington, 466 at 689).  The Tenth Circuit advises that "we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir. 2002)(quoting Strickland, 466 U.S. at 690).  To be constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no

relationship to a possible defense strategy.  See Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).  To satisfy the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694.

When reviewing a claim of ineffective assistance of counsel which a state court has denied, the burden is even heavier: "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Harrington v. Richter, 131 S.Ct. at 788 (internal citations and quotations omitted).  "When § 2254 applies, the question is not whether counsel's actions were reasonable[; rather, t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington v. Richter, 131 S.Ct. at 788.  The Court does not indulge in the "distorting effects of hindsight."  Strickland v. Washington, 466 U.S. at 689.

Chavez argued ineffective assistance of counsel on direct appeal.  The Respondents, therefore, do not dispute that Chavez has exhausted the available state-court remedies with respect to this issue.  See Answer at 10-11.

**A.    THE STATE COURT DID NOT ACT CONTRARY TO, OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR MR. MCMILLIAN'S FAILURE TO INVESTIGATE CHAVEZ' STATE OF MIND.**

Chavez claims that his trial counsel was ineffective because he failed to investigate Chavez' life history and state of mind at the time of the incident at issue.  See Petition at 22-24.  Chavez states that, because he abused drugs, he was not in a right state of mind and was incapacitated at the time of the crime.  See Petition at 22-24.  Chavez further states that counsel

should have insisted on a competency exam to ensure that he was competent to stand trial.  See Petition at 22-24.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland v. Washington, 466 U.S. at 690-91.  In deciding whether additional investigation is necessary, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland v. Washington, 466 U.S. at 690-91.

Chavez' theory of defense from the outset was that he acted in self-defense, and not that he was incapacitated or under the influence of drugs or alcohol.  Nothing in the record suggests that Chavez' drug abuse or related incapacity on the night of the shooting was foundational to his defense.  Chavez stated to the police that he had acted in self-defense.  See Dec. 28, 2012 Order at 39.  Mr. McMillian posited a theory of self-defense throughout the trial beginning with his opening statement and ending with his closing argument.  See Sept. 1, 2000 Tr. at 40-44; Jan. 12, 2000 Tr. at 189-208.  Chavez insists even now that he acted in self-defense.  See Petition at 24-25, 26.  Evidence at trial that Chavez saw Mr. Tischmacher at the gas station, assessed him to be "an old man that looks like he'll give up his wallet easy," told Young to "duck down," and hid his gun behind his back as he then approached Mr. Tischmacher belies any notion that he was incapacitated at the time of the crime.  Thus, any decision that Mr. McMillian made to not investigate Chavez' state of mind at the time of the murder was reasonable under the

circumstances.  Furthermore, as stated by Judge Ibarra in his order denying Chavez' habeas petition in state court, "even if such information [about Chavez' drug abuse or Methadone use] were admissible, it would be a reasonable trial strategy to not bring out such information at trial, as it could certainly have been very prejudicial to the defense."  Dec. 28, 2012 Order at 26.

With regard to Chavez' suggestion that he may have been incompetent to stand trial, a criminal defendant is incompetent to stand trial if he lacks (i) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or (ii) "a rational as well as factual understanding of the proceedings" against him.  Dusky v. United States, 362 U.S. 402 (1960).  Trial of an incompetent defendant violates substantive due process.  See Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); United States v. Williams, 113 F.3d 1155, 1160-61 (10th Cir. 1997).  "A habeas petition is entitled to a nunc pro tunc evidentiary hearing for the purpose of proving that he was incompetent at the time of trial only 'when he makes a showing by clear and convincing evidence to raise threshold doubt about his competency.'"  Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997)(citations omitted).  "In order . . . to raise such doubt, [the petitioner] must present facts sufficient 'to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' concerning his mental capacity."  Nguyen v. Reynolds, 131 F.3d at 1346 (citations omitted).

After a careful review of the record, the Court finds that Chavez' competency argument lacks a solid basis in the law and facts.  The record is void of any discussion before, during, or after the trial regarding Chavez' competency to stand trial.  Nothing in the record indicates that Chavez was anything other than lucid at the time of trial and understood the charges against him. Chavez consistently proffered a theory of self-defense and has vigorously appealed the jury verdict since his conviction, much of the time pro se.  Chavez' conclusory assertion that he was

mentally incompetent at the time of trial is insufficient to show by clear-and-convincing evidence a threshold doubt about his competency.  Furthermore, "[c]onclusory assertions are insufficient to establish ineffective assistance of counsel."  United States v. Blanca-Leon, 317 F. App'x 836, 838 (10th Cir. 2009)(citing United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994)).

Thus, in dismissing Chavez' state-of-mind claim, the state court did not act contrary to, or unreasonably apply federal law.  Therefore, Chavez has failed to state a claim upon which relief can be granted.

**B.  THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' CLAIM THAT MR. MCMILLIAN ALLEGEDLY ACTED INEFFECTIVELY IN NOT ADVISING CHAVEZ OF HIS RIGHT TO TESTIFY.**

Chavez alleges that, after his testimony was interrupted, Mr. McMillian failed to properly counsel him regarding his right to testify.  See Petition at 24.  "A criminal defendant has a constitutional right to testify in his own behalf at trial.  The decision whether to testify lies squarely with the defendant; it is not counsel's decision."  Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004)(citations omitted).  "[C]ounsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy."  Cannon v. Mullin, 383 F.3d at 1171

As discussed above, Chavez had just started testifying when the State raised certain relevancy objections.  See Aug. 31, 2000 Tr. at 167-69.  A bench conference ensued, followed by Judge Dal Santo excusing the jury and hearing argument from counsel in open court.  See Aug. 31, 2000 Tr. at 170-179.  At the conclusion of Mr. McMillian's argument, Mr. McMillian stated to Judge Dal Santo: "At this point we rest."  Aug. 31, 2000 Tr. at 177.  Judge Dal Santo did not,

- 39 -

however, allow Mr. McMillian to "rest" until she was certain he consulted with Chavez regarding Chavez' decision not to testify.  Aug. 31, 2000 Tr. at 178.  After a brief recess, Mr. McMillian informed the court that Chavez would not be testifying.  See Aug. 31, 2000 Tr. at 178.  Nonetheless, Judge Dal Santo indicated her concern that Chavez may be making his decision because his counsel was angry.  See Aug. 31, 2000 Tr. at 179.  Judge Dal Santo recessed until the following morning in order to give Chavez a chance to sleep on his decision.  Aug. 31, 2000 Tr. at 179.  When Judge Dal Santo reconvened the next morning, she specifically questioned Mr. McMillian and Chavez regarding whether or not Chavez wanted to testify.  See Sept. 1, 2000 at 38-39.  Chavez affirmatively stated he was not going to testify.  See Sept. 1, 2000 at 38-39.  Thus, the record supports that Mr. McMillian adequately informed Chavez of his right to testify and that Chavez knowingly waived his right to testify.  Further, the record demonstrates that Judge Dal Santo also stressed in Chavez' presence that the decision not to testify was Chavez' alone to make.

Further, even if Mr. McMillian's representation fell below an objective standard of reasonableness as to this issue, Chavez has failed to demonstrate prejudice.  Chavez states that, if he had testified, he would have stated that he was a "drug addict, looking for a couple of dollars to buy some cigarettes and acted in self-defense when the victim began yelling angry racial words and then doused Chavez with gasoline and was fearful his life was in danger."  Petition at 24.  Despite not testifying, Chavez repeated his theory of self-defense at trial.  Specifically, Chavez presented his theory of self-defense to the jury through his taped interview with the police.  See Sept. 1, 2000 Tr. at 197, 200; Dec. 28, 2012 Order at 39.  Chavez' statement detailed his account of what happened.  Chavez stated that he had only "asked him if I could borrow a dollar," and that Mr. Tischmacher called him a "fucking Spick" and told him to "get a job, you

bum."  Dec. 28, 2012 Order at 27.  Chavez stated that he "panicked" when Mr. Tischmacher sprayed the gas and that Mr. Tischmacher was a "big man, bigger than me."  Dec. 28, 2012 Order at 31.  Chavez stated he acted in self-defense.  <u>See</u> Dec. 28, 2012 Order at 39.  Mr. McMillian discussed the self-defense theory in his opening statement and closing argument.  <u>See</u> Aug. 29, 2000 Tr. at 40-44; Sept. 1, 2000 Tr. at 189-208.  Given that Chavez' account of the event was presented to the jury, he cannot show prejudice.

In dismissing Chavez' claim that Mr. McMillian allegedly acted ineffectively in not advising him of his right to testify, the state court did not act contrary to or unreasonably apply federal law.  Chavez, therefore, has failed to state a claim upon which relief can be granted with regard to his claim that Mr. McMillian was ineffective in allegedly failing to adequately advise him of his right not to testify.

### C.   THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' CLAIM THAT HIS COUNSEL ACTED INEFFECTIVELY IN FAILING TO PROPERLY INSTRUCT THE JURY.

Chavez alleges that Mr. McMillian failed to properly explain to the jury that the State has to prove each element beyond a reasonable doubt.  <u>See</u> Petition at 25-26.  Chavez' contention is both misplaced and lacks support in the record.   The trial judge informed the jury at the beginning of trial as follows:

> A criminal trial generally begins with the lawyers telling you what they expect the evidence to show.  Then the evidence will be presented to you.  The evidence will be the testimony of witnesses, exhibits, and any facts agreed to by the lawyers.
>
> After you have heard all of the evidence, I will instruct you on the law.  The lawyers will then argue the case, and then you will retire to the jury room to arrive at a verdict.

Aug. 28, 2000 Tr. at 7 (emphasis added.)   "[T]he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions

of law." <u>Geders v. United States</u>, 425 U.S. 80, 86 (1976)(quoting <u>Quercia v. United States</u>, 289 U.S. 466, 469 (1933)). Thus, it is the role of the trial judge to instruct the jury on the law.

Here, the record is clear that Judge Dal Santo fully advised the jury regarding the elements of each claim and the State's burden of proving Chavez' guilt beyond a reasonable doubt. In Judge Dal Santo's opening statements to the jury, she read each of the charges against each defendant. <u>See</u> Aug. 28, 2000 Tr. at 5. She explicitly stated, "[e]ach count is a charge of a separate crime. The defendants each have pled not guilty and are presumed to be innocent. The state has the burden of proving the guilt of each defendant beyond a reasonable doubt." <u>See</u> Aug. 28, 2000 Tr. at 5. Prior to closing arguments, the trial judge read the jury instructions to the jury. Sept. 1, 2000 at 111. Instruction No. 2 states as follows:

> The law presumes the defendant to be innocent unless and until you are satisfied beyond a reasonable doubt of his guilt.
>
> The burden is always on the state to prove guilt beyond a reasonable doubt. It is not required that the state prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense – the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.

Jury Instructions at 4. Further, the jury instructions explicitly stated as to each crime charged that "the State must prove to your satisfaction beyond a reasonable doubt <u>each of the following elements of the crime</u> . . . ." Jury Instructions at 5, 6, 8, 12, 13, 14, 15, 16, 18, 19, 20, 21)(emphasis added). In addition to Judge Dal Santo's instructions, Mr. McMillian thoroughly explained in his closing argument the elements of each crime charged against Chavez and reiterated the State's burden of proof. <u>See</u> Sept. 1, 2000 Tr. at 200-208. Chavez' contention lacks support in the record.

In dismissing Chavez' claim that his counsel acted ineffectively in failing to properly instruct the jury, the state court did not act contrary to or unreasonably apply federal law.

Chavez, therefore, has failed to state a claim upon which relief can be granted with regard to his claim that his counsel was ineffective in allegedly failing to properly instruct the jury.

### D.   THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' CLAIM THAT MR. MCMILLIAN ALLEGEDLY ACTED INEFFECTIVELY IN NOT INVESTIGATING DETVONGSA.

Chavez argues that trial counsel failed to conduct an adequate pretrial investigation of Detvongsa, including his past criminal history and outstanding warrants.  See Petition at 32-34. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland v. Washington, 466 U.S. at 691.  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland v. Washington, 466 U.S. at 691.  "Counsel [i]s entitled to formulate a strategy that [i]s reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington v. Richter, 131 S.Ct. at 789.

Here, the record supports that Detvongsa had been difficult to find because he had given a false name to authorities when he was initially interviewed.  See Aug. 28, 2000 Tr. at 8-12. Judge Dal Santo determined, however, that "since he has been found and interviewed, I'm going to go ahead and allow his testimony."  Aug. 28, 2000 Tr. at 12.  Mr. McMillian had access to Detvongsa's initial interview and also interviewed him eleven days before trial.  See Aug. 28, 2000 Tr. at 11.  While Chavez asserts that an adequate investigation would have included uncovering information about Detvongsa's prior criminal history and outstanding warrants, the record supports that the jury was fully informed regarding Detvongsa's outstanding warrants. See Jury Instructions at 2.  In addition, both the State and co-Defendant DeHerrera questioned Detvongsa regarding his prior criminal history and the deal he made with the State in exchange

for his testimony.  See Aug. 29, 2000 Tr. at 101, 113-114, 128-129, 135-139, 140.  Moreover, as previously noted, the parties entered a Stipulation regarding Detvongsa's outstanding warrants and the amounts of those warrants.  See Jury Instructions at 2.  Thus, the record refutes Chavez' contentions.  Further, even if Mr. McMillian did not sufficiently investigate Detvongsa's background, Chavez has not shown prejudice; the information he believes an adequate investigation would have uncovered was disclosed at trial.

In dismissing Chavez' claim that Mr. McMillian allegedly acted ineffectively in not investigating Detvongsa, the state court did not act contrary to or unreasonably apply federal law. Therefore, Chavez has failed to state a claim upon which relief can be granted with regard to his claim that his counsel was ineffective in failing to investigate Detvongsa.

**E.  THE STATE COURT DID NOT ACT CONTRARY TO OR UNREASONABLY APPLY FEDERAL LAW IN DISMISSING CHAVEZ' CLAIM THAT HIS COUNSEL ALLEGEDLY ACTED INEFFECTIVELY IN FAILING TO ADEQUATELY IMPEACH DETVONGSA.**

Chavez alleges that Mr. McMillian acted ineffectively in failing to adequately impeach Detvongsa.  See Petition at 34.  Chavez specifically points to Mr. McMillian's failure to show that Detvongsa allegedly made a statement to his girlfriend that he was sitting in the car at the time of the shooting and could not see what happened.  See Petition at 34.  Chavez also points to Mr. McMillian's decision not to recall Detvongsa after Locson testified regarding the inconsistent statement.  See Petition at 31.[3]  Here, Mr. McMillian was not ineffective.  He made objections.  He presented arguments.  If there was error in Judge Dal Santo's decision, it was not because of Mr. McMillian's ineffectiveness.  In fact, Mr. McMillian aptly circumvented Judge Dal Santo's adverse ruling by calling Locson, where she testified regarding the statement

---

[3]Because the record on this issue is extensively set forth in section I.D.2., supra, the Court will not repeat it here.

Detvongsa made.  Further, even if Mr. McMillian ineffective, for the reasons stated in section I. D. 2., supra, Mr. McMillian impeached Detvongsa's testimony on this point.  Thus, no reasonable probability exists that but for Mr. McMillian's errors, the result of the proceedings would have been different.

As to Mr. McMillian's decision not to recall Detvongsa after Locson's testimony, "the decision whether to call a witness rests within the sound discretion of trial counsel."  Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998)(citing United States v. Snyder, 787 F.2d 1429, 1432 (10th Cir. 1986)).  As noted by Judge Ibarra in his Order on Amended Petition for Writ of Habeas Corpus, Mr. McMillian could have reasonably determined that additional testimony from Detvongsa would have given him the opportunity to explain away his alleged statement to Locson to Chavez' disadvantage.  See Dec. 28, 2012 Order at 24.  Further, Judge Dal Santo had already ruled that Mr. McMillian could not ask Detvongsa about the statement, so recalling him would have been pointless.  Further, for the reasons discussed in section A.4.b., supra, no reasonable probability exists that, but for Mr. McMillian's errors, the result of the proceedings would have been different if Detvongsa had been recalled.

In dismissing Chavez' claim that his counsel allegedly acted ineffectively in failing to adequately impeach Detvongsa, the state court did not act contrary to or unreasonably apply federal law.  Chavez has, therefore, failed to state a claim upon which relief can be granted with regard to his claim that his counsel was ineffective in allegedly failing to adequately impeach Detvongsa.

**IT IS ORDERED** that: (i) the Respondents' Motion for Judgment on the Pleadings as to Toby G Chavez's Petition for Writ of Habeas Corpus (28 U.S.C. § 2554)(Doc. 16) is granted,

and (ii) Chavez' Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed April 19,

2013 (Doc. 1), is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE


*Counsel and Parties:*

Toby G. Chavez.
Southern New Mexico Correctional Facility
Las Cruces, New Mexico

      *Plaintiff pro se*

Gary K. King
  New Mexico Attorney General
Jane Bernstein
  Assistant New Mexico Attorney General
New Mexico Attorney General's Office
Albuquerque, New Mexico

      *Attorneys for the Defendants*